**LUKE A. WEGMANN**,

                  *Plaintiff,*

    v.

**TRUSTEES OF JOHN A. LOGAN COLLEGE**, **WILLIAM J. KILQUIST**, CHAIR; **AARON R. SMITH**, VICE-CHAIR; **JACOB "JAKE" RENDLEMAN**, SECRETARY; **REBECCA BORGSMILLER**; **DR. BRENT CLARK**; **MANDY LITTLE**; AND **DR. GLENN POSHARD**; in their official and individual capacities; **Kirk Overstreet, PhD**, President, in his official and individual capacities; AND **KAREN KASBAN**, DMS Program Coordinator, in her official and individual capacities;

                  *Defendants.*

Civil Case No. 3:22-CV-02406

**JURY TRIAL DEMANDED**

### PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff Luke A. Wegmann, for his complaint against Defendants, states:

### INTRODUCTION

1.      Mr. Wegmann is an individual with an interest in becoming a cardiac sonographer and, after learning of the diagnostic cardiac sonography program at John A. Logan College, he applied for and was accepted into the College's program— also known as the DMS Cardiac Sonography Program (Program).

2.      The Program Coordinator at the College is Ms. Karen Kasban. Mr. Wegmann advised Ms. Kasban upon his acceptance into the DMS Program that he has sincere religious beliefs against receiving vaccinations, including the COVID-19 vaccination. Mr. Wegmann provided Ms. Kasban with a statement of his sincere religious beliefs which form the basis for his objection to the COVID-19 vaccination, and Kasban never challenged the religious nature or sincerity of his beliefs.

3. The DMS Program includes clinical rotations at clinical affiliates—usually hospitals—and some of these affiliates have Flu and COVID-19 vaccination requirements which are subject to medical or religious exemptions issued by the College.

4. Mr. Wegmann learned that the clinical site for his rotation would be Blessing Hospital, and he contacted the hospital's human resources department to inquire about a religious exemption. Blessing Hospital's human resources department informed Mr. Wegmann that the hospital did not provide exemptions, but would accept a religious exemption from the College.

5. When Mr. Wegmann requested an exemption from Ms. Kasban, she informed him that the College did not require the COVID-19 shot and therefore, it could not accommodate his religious beliefs by providing him with a religious exemption for the clinical affiliate. Effectively, Kasban told Wegmann he should be vaccinated or withdraw from the program. But the College has a simple form providing for a medical or religious exemption from the flu vaccination and included that form in the packet provided to the DMS Program students.

6. Karen Kasban, in her capacity as the DMS Cardiac Sonography Program Coordinator, forced Mr. Wegmann to withdraw from the DMS Program instead of accommodating his sincere religious beliefs by granting an exemption from the COVID-19 vaccination requirement of a clinical affiliate of the College, while offering such an exemption from the flu vaccination.

## Jurisdiction & Venue

7. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

8. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

9. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201–02 and Fed. R. Civ. P. 57; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

10. This court has supplemental jurisdiction over the state law claims asserting violations of the Illinois Constitution and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1, et seq., under 28 U.S.C. § 1367(a).

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district and division.

### III. PARTIES

12. Luke A. Wegmann is an Illinois citizen residing in Woodlawn, Illinois.

13. John A. Logan College is a public two-year comprehensive community college founded in 1967, and organized and existing under the laws of the State of Illinois. The College is located at 700 Logan College Drive, Carterville, IL 62918; in college district #530; in Jackson and Williamson Counties, as well as portions of Franklin, Perry, and Randolph Counties.

14. Defendant William J. Kilquist is Chairman of the Board of Trustees of the College; Defendant Aaron R. Smith is Vice Chair of the Board of Trustees; Defendant Jacob "Jake" Rendleman is Secretary of the Board of Trustees; and Rebecca Borgsmiller, Dr. Brent Clark, Mandy Little, and Dr. Glenn Poshard are, and were at all times relevant to this Complaint, members of the College's Board of Trustees. The Trustees are sued in their official and individual capacities.

15. Collectively, the Board of Trustees is responsible for adopting and authorizing policies and procedures that govern the College—including its employees—and comply with clearly established state and federal law.

16. The Trustee Defendants are the final policy making authority for rules and regulations that govern the College.

17. Each of the Trustee Defendants is responsible for the enactment, amendment, and repeal of Board of Trustee policies, including those relevant herein.

18. The Trustee Defendants possess the authority to change and enforce the policies relevant to this cause of action.

19. Each of the Trustee Defendants acquiesces in, sanctions, and supports the actions of the other Defendants in changing or enforcing the policies and procedures governing College employees, including the policies relevant to this action.

20. Specifically, the Trustee Defendants have not instructed College personnel, including the other Defendants, to modify or enforce the policies and practices challenged herein to comply with constitutional mandates, or change the way those policies are applied to students in the DMS Cardiac Sonography Program, like Plaintiff, Luke Wegmann.

21. Kirk Overstreet, PhD, is the President of the College. As President, Defendant Overstreet is the College's chief executive, educational, and administrative officer of the College. Dr. Overstreet is sued in his official and individual capacities.

22. Dr. Overstreet's duties include authorizing, executing, enforcing, and implementing the policies governing College employees and overseeing the operation and management of the College.

23. Defendant Overstreet had supervisory authority over the College's DMS Program Coordinator, Karen Kasban, and the College's activities related to the DMS Program.

24.     As Chief Executive Officer, Dr. Overstreet confirmed, sanctioned, and ratified Ms. Kasban's decision to refuse to provide Plaintiff Wegmann a religious exemption from the COVID-19 vaccine mandate of a clinical affiliate, thereby preventing him from completing his clinical rotation; confirmed, sanctioned, and ratified Ms. Kasban's ultimatum to Mr. Wegmann that he either receive the COVID vaccine or withdraw from the DMS Program; and confirmed, sanctioned, and ratified Ms. Kasban's failure to provide Mr. Wegmann with equal educational opportunity by accommodating his sincere religious beliefs, as required by the College's "Equal Educational Opportunity" policy (Board Policy 3510), 2022/2023 Student Guidebook, at page 19.

25.     Dr. Overstreet confirmed, sanctioned, and ratified Ms. Kasban's denial of Mr. Wegmann's constitutional right to the free exercise of his religious beliefs—which right was clearly established at the time.

26.     Defendant Karen Kasban is the College's DMS Cardiac Sonography Program Coordinator and was responsible for ensuring that the Program's policies and procedures accorded with state and federal law, that the College provided students with the assistance necessary to progress through the program and complete the Program—ultimately becoming cardiac sonographers.

27.     Defendant Kasban was responsible for the creation, application, and enforcement of the College's informal policy against providing religious exemptions for students, like Mr. Wegmann, from the vaccine mandate of clinical affiliates, like Blessing Hospital.

28.     Defendant Kasban is sued in her official and individual capacities.

29.     Defendant Kasban also retaliated against Mr. Wegmann for his protected conduct of requesting that the College issue a religious exemption to him from clinical affiliate-Blessing Hospital's COVID-19 vaccine mandate—she denied the exemption on the basis that the College does not mandate the vaccine and,

therefor, cannot issue an exemption—and then told Wegmann he would need to receive the vaccine or withdraw from the Program—compelling his withdraw.

30. Mr. Wegmann's right to engage in such protected conduct without retaliation was clearly established at the time.

31. The acts and policies alleged in this complaint are attributed to Defendants, who acted under color of statute, ordinance, regulation, custom, or usage of John A. Logan College, a public community college of the State of Illinois.

FACTUAL ALLEGATIONS

**A. John A. Logan College, COVID-19, and the College's DMS Cardiac Sonography Program**

32. The John A. Logan College 2022/2023 Student Guidebook states at page 29 that the College requires all students to have a COVID-19 vaccine or participate in weekly testing; but the College updated its COVID-19 statement, indicating that there is no longer any vaccine requirement or provision for weekly testing.

33. Since most—if not all—of the clinical affiliates of the College's DMS Cardiac Sonography Program, like Blessing Hospital, require a COVID-19 vaccine from students in the DMS Program, subject to an exemption from the College, the only way for a student who requires a religious exemption to participate in clinical rotations and complete the Program is for the College to issue an exemption.

34. There is no known College policy preventing the College from granting a religious exemption to a DMS Program student like Mr. Wegmann so that he can participate in a clinical rotation located at a clinical affiliate.

35. The John A. Logan College 2022/2023 Student Guidebook contains an "Equal Educational Opportunity" policy (reinforced by Board Policy 3510) at page 19, stating, in relevant part: "John A. Logan College is committed to equal access and equal opportunity for all students. Admission, … curriculum requirements,

extracurricular participation, … or any other service or program of the College shall be provided without regard to … religion … ."

36. The accrediting body of health science programs like the John A. Logan College DMS Cardiac Sonography Program is the Commission on Accreditation of Allied Health Education Programs (CAAHEP).

37. CAAHEP's Board of Directors approved an updated COVID-19 statement on November 19, 2021, a copy of which is attached as Exhibit A and included by reference.

38. CAAHEP's statement recommends vaccination, but "affirms that students, faculty, and staff, with appropriate exemptions required by federal and/or state law, may be exempted from receiving the COVID-19 vaccines."

39. CAAHEP acknowledges that one category of appropriate exemptions is for students with a qualifying disability, and "[a]nother category of appropriate exemptions is for students who have a sincerely held religious belief, practice, or observance under the First or Fourteenth Amendments of the United States Constitution, and under applicable federal statutes and regulations that protect students form unlawful discrimination on the basis of religion." CAAHEP also acknowledges that state laws protect students from religious discrimination and that some state laws go beyond federal law. See Exhibit A at p. 2.

40. CAAHEP recommends that schools like the College notify students and obtain a written acknowledgment from students that some clinical affiliates may not honor "legally-cognizable disability or a sincerely-held religious belief," which will prevent the student from participating in a required clinical rotation and completing the requirements of a program. *Id.*

41. While the College provided such a document to students in the DMS Program, including Mr. Wegmann, it was irrelevant, since the clinical site for his

clinical rotation, Blessing Hospital, advised him it would accept a religious exemption from the College. See Exhibit B, attached and included by reference.

**B. The religious nature of Mr. Wegmann's beliefs regarding vaccinations and specifically, the COVID-19 vaccination.**

42. The religious nature and sincerity of Mr. Wegmann's beliefs concerning vaccinations is explained in a two-page statement of religious beliefs, how they inform his life, and specifically, how they inform his decision regarding the COVID-19 vaccination. A copy of that document is attached as Exhibit C and included by reference.

43. Mr. Wegmann attached his statement of religious beliefs (Exhibit C) in an email to Ms. Kasban dated July 13, 2022, which also provided additional documents required for the DMS Program.

44. Ms. Kasban never contested the religious nature of Mr. Wegmann's beliefs or their sincerity.

**C. Mr. Wegmann's request for an accommodation based on his sincere religious beliefs and the College's response.**

45. Mr. Wegmann was accepted into the College's DMS program in April of 2022.

46. In early June, he picked up books for summer classes and spoke in person with Karen Kasban, the DMS Program Coordinator, in her office about his desire for a religious exemption from any COVID-19 vaccination requirement.

47. In the June meeting with Ms. Kasban, Mr. Wegmann informed her that he is a Christian and that immunizations conflict with his faith.

48. Ms. Kasban told Mr. Wegmann that the need for an exemption depends on the hospital selected for the clinical rotations, and that he would need to address it with each clinical site he was chosen to attend for clinical rotations.

49.     Karen Kasban emailed all of the DMS class members on June 6, 2022 and included revised clinical site agreements. Ms. Kasban revised the original site agreements that were included in the DMS Program packet after Mr. Wegmann and another DMS student, Sarah Carr, notified Ms. Kasban of their intentions to submit religious exemptions for the COVID-19 vaccine.

50.     On June 16, 2022 Mr. Wegmann learned that his first clinical rotation would be at Blessing Hospital in Quincy, Illinois. On this date, Ms. Kasban held a mandatory meeting with DMS Program students to randomly select clinical sites.

51.     Later that month, Mr. Wegmann contacted Blessing Hospital human resources and inquired about submitting documents necessary for approval.

52.     Stephanie Whitney of Blessing Hospital Human Resources responded and informed Mr. Wegmann that Blessing Hospital accepts religious exemptions issued by the College with the DMS program paperwork sent to each clinical site before attendance. Ms. Whitney's June 27 email to Mr. Wegmann states, "it is up to each school to either keep track of testing or ensure that an exemption is in place." See Exhibit B. And the Blessing Hospital policy states: "All records of vaccines, exemptions and testing must be maintained by the school and the student and must be available to Blessing upon reasonable request." *Id.*

53.     The next day—June 28–Ms. Kasban emailed the DMS class and requested COVID-19 vaccination status and documentation. Mr. Wegmann shared the information from Ms. Whitney of Blessing Hospital about the religious exemptions. Ms. Kasban replied that day, informing Wegmann that the College does not have exemptions for the COVID vaccine, but does require weekly testing for the unvaccinated. She added that it will be up to the clinical site whether to approve testing in place of an exemption, but if so, that will get Mr. Wegmann through the first clinical rotation.

54.     During the second week of July, Kasban emailed Mr. Wegmann about attending orientation at Blessing Hospital on July 25. Ms. Kasban and Mr. Wegmann discussed the details of weekly testing for attendance to complete the DMS Program's clinical requirements.

55.     After Illinois Governor Pritzker lifted the COVID-19 testing mandate for college students on July 14, Mr. Wegmann emailed Ms. Kasban and asked if the College would accept COVID test results from locations other than the College's testing center, since it was a weekly requirement for attendance at Blessing Hospital. Mr. Wegmann also asked if he should send the weekly test results to her.

56.     Ms. Kasban responded that she believed Blessing would require weekly testing and that Mr. Wegmann should send the results to her.

57.     Accordingly, Mr. Wegmann had the VA clinic in Mt. Vernon, IL perform a test on July 19 and mailed the negative results to Ms. Kasban on July 21.

58.     For the first time on July 28, 2022, Karen Kasban emailed Mr. Wegmann and informed him that "Blessing Hospital does require the COVID-19 vaccination, as [do] all of the clinical affiliates that partner with the [College's] DMS program." Kasban added: "Blessing [H]ospital does not provide exemptions for students, and since the college does not mandate the COVID-19 vaccination, the college does not provide exemptions." Kasban also foreclosed the possibility of weekly testing, noting that the College "no longer provides weekly testing for students" and "does not monitor COVID testing" and "Blessing Hospital will not provide weekly testing or monitor test results of students assigned to attend." An accurate copy of Kasban's 7.28.22 email to Wegmann is attached as Exhibit D and included by reference.

59.     Ms. Kasban's July 28th email then advises Mr. Wegmann that the clinical site requires a vaccination or an exemption; the College will not issue an

exemption; testing and monitoring are not an option; and therefore, requirements to attend Blessing Hospital "will not be met with an unvaccinated status."

60.     Ms. Kasban's July 28th email concludes by telling Mr. Wegmann he must comply with clinical site requirements and DMS program requirements in order to begin the clinical rotation on September 29, 2022, and that "if requirements are not met in order to attend on this date, failure to progress in the DMS program will result."

61.     In her capacity as DMS Program Coordinator for John A. Logan College, Ms. Kasban knew, or should have known, that the John A. Logan College 2022/2023 Student Guidebook contains a section at page 19 titled, "Equal Educational Opportunity." The EEO section references Board Policy 3510 in the Guidebook Appendix, and both contain the College's commitment to equal access and opportunity for all students, stating, in relevant part, that curriculum requirements, or any other service or program of the College shall be provided without regard to … religion … . An accurate copy of the EEO Policy is attached as Exhibit E and included by reference.

62.     In order to provide Mr. Wegmann with equal access and opportunity in the DMS program's clinical site rotation, and not discriminate against Mr. Wegmann on the basis of his sincerely-held religious beliefs against receiving the COVID-19 vaccination, Ms. Kasban was required to accommodate Mr. Wegmann's religious beliefs by providing him with an exemption from any clinical affiliate's vaccination requirement.

63.     Upon information and belief, Ms. Kasban knew at the time she sent the July 28, 2022 email to Mr. Wegmann, that the clinical sites would accept a religious exemption issued by the College to Mr. Wegmann.

64.     Upon information and belief, Ms. Kasban knew on July 28, 2022 that the College previously required the COVID-19 vaccination, and that the College was

subject to requests for exemptions from that requirement for medical and religious reasons.

65.    Ms. Kasban knew, or should have known, that the documentation provided to students in the DMS program included a "Flu Immunization" form noting that some clinical sites require the flu shot during flu season. The form notes that if a student has medical or religious reasons for not receiving the flu shot, they can present either a doctor's statement or a "clergy" statement documenting the objection, and the student will not be required to take the vaccination. An accurate copy of the "Flu Immunization" form is attached as Exhibit F and included by reference.

66.    Ms. Kasban knew, or should have known, on July 28, 2022 that if the College required the COVID-19 vaccination, she, or someone she knew within the College's administration, had the ability to issue a religious exemption to a student like Mr. Wegmann, or ask him to present a "clergy" statement documenting his beliefs, in order to provide him with equal access to clinical affiliates in the DMS program.

67.    Upon information and belief, on July 28, 2022, Kasban knew that she, or someone she knew within the College's administration, had the ability to provide Mr. Wegmann with an exemption from Blessing Hospital's vaccination requirement by stating that Mr. Wegmann provided evidence of his sincere religious beliefs against the COVID-19 vaccination, and the College finds Mr. Wegmann exempt from any vaccination requirement imposed by the College or by a clinical affiliate of the College, such as Blessing Hospital.

68.    Upon information and belief, Karen Kasban knew that, unless the College issued students like Mr. Wegmann a religious exemption from any vaccination requirement maintained by a clinical site, the students would be unable

to attend clinical rotations and, therefore, would be unable to complete the DMS program.

69. Upon information and belief, at the time Karen Kasban made the statements contained in her July 28, 2022 email to Mr. Wegmann, she was biased in favor of the COVID-19 vaccination for all students in the DMS program.

70. Upon information and belief, at the time Karen Kasban made the statements contained in her July 28, 2022 email to Mr. Wegmann, she was prejudiced against religious exemptions from the COVID-19 vaccination for all students in the DMS program.

71. Effectively, Ms. Kasban, individually and on behalf of the College, told Mr. Wegmann the College would not accommodate his sincere religious beliefs by issuing an exemption from any COVID-19 vaccination requirement maintained by the clinical affiliates.

72. At the time Kasban so informed Mr. Wegmann, she had no reason to doubt the religious nature of Mr. Wegmann's beliefs or the sincerity of his religious beliefs.

73. Between July 29–August 8, 2022, Karen Kasban and Mr. Wegmann exchanged emails defending their respective positions on the religious exemption process and the College's duty to accommodate religious beliefs, but Ms. Kasban maintained her position that Mr. Wegmann must receive the COVID-19 vaccination in order to continue in the DMS Program.

74. Ms. Kasban never responded to Wegmann's last email, in which he reminded her that the DMS program packet included a blank application for a flu vaccine religious exemption.

75. Totally frustrated with the College's refusal to engage in reasonable discussions about a religious accommodation, and after not hearing from Kasban for nearly a week, Mr. Wegmann told Karen Kasban that he would not violate his

religious beliefs just to remain in the DMS program and that she will have to withdraw him.

### D. The effect of Defendants' unconstitutional actions on Mr. Wegmann

76.     The Defendants' religious discrimination and unconstitutional actions prevented Mr. Wegmann from participating in and completing a program that he was qualified for and would have otherwise completed in due course.

77.     The Defendants' discrimination and unconstitutional actions forced Mr. Wegmann to withdraw from a program when he should have received a religious accommodation that would have allowed him to complete the program, begin work as a cardiac sonographer, and receive the annual compensation associated with that position when performed on a full-time basis.

78.     Because of Defendants' religious discrimination and unconstitutional actions, Mr. Wegmann has suffered future loss of employment and wages.

79.     Defendants' refusal to reasonably accommodate Mr. Wegmann's sincere religious beliefs and retaliation against him for requesting an exemption have also caused him to suffer mentally and emotionally.

**COUNT ONE**
**Violation of Plaintiff's First Amendment Right to Free Exercise of Religion**
**(42 U.S.C. § 1983)**

80.     Mr. Wegmann repeats each of the allegations in paragraphs 1–79.

81.     Mr. Wegmann's religious activities are protected by the Free Exercise Clause of the First Amendment of the Constitution of the United States. Those protections constrain Defendants through the Due Process Clause of the Fourteenth Amendment.

82.     The actions of Defendants in refusing to accommodate Wegmann's sincere religious beliefs against receiving a COVID-19 vaccination, by granting him an exemption from the vaccination requirement of any clinical hospital location,

interfere with Wegmann's free exercise rights, which rights were clearly established at the time.

83. Defendants' informal policy of refusing to grant students a religious exemption from the vaccination, which exemption is required for students to complete a rotation at a clinical site, based upon Defendants' claim that the College does not require a vaccination and, therefore, does not have any policy or procedure for granting an exemption, is circular, disingenuous, and violates the First Amendment's Free Exercise Clause on its face and as applied to Mr. Wegmann.

84. The lack of a policy for accommodating a student's sincere religious beliefs by issuing a religious exemption from a clinical affiliate's vaccine mandate, does not insulate the Defendants from liability for their failure to accommodate.

85. In fact, the College maintains policies and procedures for accommodating the disabilities and sincere religious beliefs of employees and students under state and federal law. Even if the College did not have such policies and procedures, it would still be liable for failing to accommodate such employees and students.

86. Defendants' policies and related practices are neither neutral nor generally applicable, but allow Defendants to target religious expression and activities specifically and to express hostility to such expression.

87. Defendants acted under color of statute, ordinance, regulation, custom, or usage of John A. Logan College, a public community college of the State of Illinois.

88. Mr. Wegmann is entitled to compensatory, nominal, and punitive damages for this infringement of his rights.

89. Wegmann has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from

refusing to accommodate his religious beliefs by providing a religious exemption from any vaccination requirement of a clinical affiliate.

90.    Under 42 U.S.C. §§ 1983 and 1988, Wegmann is entitled to declaratory relief, and temporary, preliminary, and permanent injunctive relief mandating that the Defendants provide him with a a religious exemption from any vaccination requirement of a clinical affiliate.

91.    Mr. Wegmann found it necessary to engage the services of private counsel to vindicate his legal rights under the law. He is therefore entitled to an award of attorneys' fees under 42 U.S.C. § 1988.

**COUNT TWO**
**Violation of the First Amendment—Retaliation**
**(42 U.S.C. § 1983)**

92.    Mr. Wegmann repeats each of the allegations in paragraphs 1–79.

93.    The First Amendment's Free Exercise Clause prohibits public colleges and universities and their officials from retaliating against or disciplining a student for exercising his religious beliefs.

94.    Mr. Wegmann's right to be free from such retaliation was clearly established at all relevant times.

95.    Mr. Wegmann engaged in protected conduct when he requested a religious accommodation in the form of an exemption from the COVID-19 vaccination required at a clinical site so that he could attend a clinical rotation necessary to complete the DMS program.

96.    Defendants and specifically, Defendant Kasban, refused to grant the accommodation based on the lack of a policy for an exemption, and told Mr. Wegmann that he would be required to be vaccinated or withdraw from the program.

97. Upon information and belief, Defendants, and especially Defendant Kasban, intentionally misstated Mr. Wegmann's rights to a religious accommodation in an attempt to cause him to be vaccinated or withdraw from the program.

98. Faced with this Hobson's Choice, Mr. Wegmann voluntarily withdrew.

99. Mr. Wegmann's protected conduct in requesting a religious accommodation was at least a motivating factor in the Defendants' decisions to take these actions.

100. Defendants' actions would likely deter an ordinary person in Mr. Wegmann's position and with similar religious beliefs from requesting a religious accommodation or continuing in the program.

101. Defendants acted under color of statute, ordinance, regulation, custom, or usage of John A. Logan College, a public community college of the State of Illinois.

102. Defendants acted with malice, or reckless or callous indifference to Mr. Wegmann's federally protected rights.

103. Mr. Wegmann is entitled to compensatory, nominal, and punitive damages for this infringement of his rights.

104. Wegmann has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from refusing to accommodate his religious beliefs by providing a religious exemption from any vaccination requirement of a clinical affiliate.

105. Mr. Wegmann found it necessary to engage the services of private counsel to vindicate his legal rights under the law. He is therefore entitled to an award of attorneys' fees under 42 U.S.C. § 1988.

## COUNT THREE
### Violation of Article 1, Section 3 of
### The Illinois Constitution—Free Exercise

106. Mr. Wegmann repeats each of the allegations in paragraphs 1–79.

107. Mr. Wegmann's religious activities are protected by the Free Exercise Clause of Article 1, Section 3 of the Illinois Constitution.

108. The actions of Defendants in refusing to accommodate Mr. Wegmann's sincere religious beliefs against receiving a COVID-19 vaccination, by granting him an exemption from the vaccination requirement of any clinical hospital location, interfere with Mr. Wegmann's free exercise rights, which were clearly established at all relevant times.

109. Defendants' informal policy of refusing to grant students a religious exemption from the vaccination, which exemption is required for students to complete a rotation at a clinical site, based upon Defendants' claim that the College does not require a vaccination and, therefore, does not have any policy or procedure for granting an exemption, is circular, disingenuous, and violates the Illinois Constitution's Free Exercise Clause on its face and as applied to Mr. Wegmann.

110. Defendants acted under color of statute, ordinance, regulation, custom, or usage of John A. Logan College, a public community college of the State of Illinois.

111. Defendants acted with malice or reckless indifference to Mr. Wegmann's federally protected rights.

112. Wegmann has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from refusing to accommodate his religious beliefs by providing a religious exemption from any vaccination requirement of a clinical affiliate.

## COUNT FOUR
## Violation of the Illinois Religious Freedom Restoration Act (775 ILCS 35)

113. Mr. Wegmann repeats each of the allegations in paragraphs 1–79.

114. Illinois' Religious Freedom Restoration Act ("RFRA") commands that Illinois government "may not substantially burden a person's exercise of religion,

even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15.

115.    Defendants, who are agents of an Illinois public community college and therefore subject to IRFRA, have violated IRFRA by substantially burdening Mr. Wegmann's exercise of his religion without any valid justification.

116.    Defendants' refusal to accommodate Mr. Wegmann's sincere religious beliefs, by granting him an exemption from the vaccination requirement of a clinical associate, do not further a compelling governmental interest, and are not the least restrictive means of furthering any governmental interest, compelling or otherwise.

117.    Defendants acted under color of statute, ordinance, regulation, custom, or usage of John A. Logan College, a public community college of the State of Illinois.

118.    Defendants acted with malice or reckless indifference to Mr. Wegmann's federally protected rights.

119.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from their refusal to provide a religious exemption to the vaccination requirement of any clinical affiliate.

120.    Under 775 ILCS 35/20, Mr. Wegmann is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief, as may be necessary.

121.    Mr. Wegmann found it necessary to engage the services of private counsel to vindicate his rights under the law. Mr. Wegmann is therefore entitled to an award of attorneys' fees under 775 ILCS 35/20.

Plaintiff Luke Wegmann requests that this Court enter judgment against Defendants and provide Plaintiff with the following relief:

A. A declaratory judgment that Defendants' policies and practices toward Mr. Wegmann violated his rights under the First or Fourteenth Amendment to the United States Constitution; that Defendants violated Plaintiff's constitutional rights by failing to accommodate his sincere religious beliefs and by retaliating against him; and that Defendants' informal policy is unconstitutional, both facially and as applied;

B. A preliminary and permanent injunction mandating that Defendants allow Wegmann to re-enroll in the Program, provide Wegmann with a religious exemption from any COVID-19 vaccination requirement of the College, any clinical affiliate of the College, or any other affiliate associated with the DMS Cardiac Sonography Program of the College until he has completed the Program or is unable or unwilling to continue in the program for a reason unrelated to the religious exemption;

C. An award of compensatory, nominal, and punitive damages for the violations of Plaintiffs' constitutional rights;

D. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988, and

E. For such further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Michael J. Cork*
Michael J. Cork, Esq., IL Atty. 0518395
5754 N. Delaware Street
Indianapolis, Indiana 46220-2528
317-517-4217
Cork0@icloud.com

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

/s/ *Michael J. Cork*
Michael J. Cork

## Declaration Under Penalty of Perjury

I, Luke A. Wegmann, a citizen of the United States and a resident of the State of Illinois, declare under penalty of perjury under 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge (except as to statements made on information and belief, and those I believe to be true and correct), and that the foregoing statements that pertain to me are based on my personal knowledge.

Executed on 10/11/2022.

Luke A. Wegmann